# CHARLESTON.

## GALL v. BANK.

Submitted September 9, 1901.   Decided December 18, 1901.

1. EQUITY—*Jurisdiction—Cancellation of Bond.*
    Where an action is pending on the law side of the circuit court upon a common law bond equity will not take jurisdiction to enjoin the prosecution of such action and decree cancellation of the bond on the mere ground that a compromise of the liability under the bond had been made, and that the sum of money stipulated by the compromise to be paid in discharge of such liability had been paid, as adequate defense against the bond on such grounds can be made in the action at law. (p. 598).

2. CANCELLATION—*Written Instruments.*
    Cancellation. Principles on which equity will exercise jurisdiction to cancel written instruments. (p. 599).

Appeal from Circuit Court, Barbour County.

Bill by Andrew J. Gall and others against the Tygarts Valley Bank. Decree for plaintiffs, and defendant appeals.

*Reversed.*

A. G. DAYTON and FRED. O. BLUE, for appellant.

SAM V. WOODS, for appellees.

BRANNON, PRESIDENT:

George W. Gall, Jr., was cashier of the Tygart's Valley Bank and as such executed an official bond in which Andrew J. Gall, Burton M. Gall and others were sureties, and a liability accrued to the bank on the bond against the parties thereto on account of said cashier's misconduct, and the sureties, or some of them, and the bank, as the plaintiffs in this cause allege, made a compromise of the liability under the bond, by which compromise the sureties were to pay, and did pay, to the bank six thousand dollars in full discharge of the liability. Some time afterwards the bank brought an action of debt in the circuit court of Barbour County upon the said bond, and later still Andrew J. Gall and Burton M. Gall filed their bill in equity in said court setting up the said compromise and payment of the sum stipulated by it in discharge of said liability, and stating that the bank, upon said compromise and payment, accepted the payment in full satisfaction of the liability under said bond and agreed to surrender the bond to said sureties; and such proceedings were had in this chancery suit that the court entered a decree canceling said bond, requiring its surrender to the plaintiffs, and perpetually enjoining the bank from further prosecution of the said action of debt. From this decree the bank has appealed.

We hold that equity has no jurisdiction to entertain this suit, because there is full and adequate remedy in a court of law. We do not at all deny that equity has, under proper circumstances, jurisdiction to cancel deeds and other instruments; in fact, it is the only court which can cancel an instrument; but the exercise of its jurisdiction for that purpose is under limitations which have been long prescribed. In the present instance a court of law was actually in possession of an action upon that bond upon a lawful and proper jurisdiction. The rights upon that bond were legal rights, if any existed; the right of defense against that bond based on the compromise and payment was a legal defense, both cognizable at law. Even where there is no action at law actually pending equity does not take jurisdiction to cancel a document except under special circumstances; but in this case there was an actually pending action at law, and we will see what the authorities say as to the condition upon which equity will exercise jurisdiction. Pomeroy's Equity Jurisprudence s. 179, thus states the law: "In further limitation upon

the power of equity to interfere where the primary rights, interest, or estates are legal, the doctrine is well settled that when the jurisdictions of law and of equity are concurrent, the one which first takes actual cognizance of any particular controversy ordinarily becomes thereby exclusive. If, therefore, the subject matter or primary right or interest, although legal, is one of a class, which may come within the concurrent jurisdiction of equity, and an action at law has already been commenced, a court of equity will not, unless some definite and sufficient ground of equitable interference exists, entertain a suit over the same subject matter even for the purpose of granting reliefs peculiar to itself, such as cancellation, injunction, and much less to grant the same kind of relief which can be obtained by the judgment at law. The grounds which will ordinarily prevent the application of this doctrine, and will permit the exercise of equitable jurisdiction in such cases, are the existence of some distinctively equitable feature of the controversy, which cannot be determined by a court of law, or some fraudulent or otherwise irregular incidents of the legal proceedings sufficient to warrant their being enjoined, or the necessity of a discovery, either of which grounds would render the legal remedy inadequate. This rule results in part, in the United States, from the provisions of the national and State Constitutions securing the right to a jury trial which belongs especially to the machinery of legal actions." In *Shelby* v. *Bacon,* 10 How. 56, it is held: "Where two tribunals have concurrent jurisdiction, the one which first obtains possession of the subject must adjudicate, and neither party can be forced into another jurisdiction." These principles deny this bill any standing in the court of equity, because of the pendency of the action at law. This is enough to decide the case; but even if there were not an action at law brought long before the chancery suit, the authorities say that equity has no jurisdiction because the door of a common law court is wide open to the defense based on that compromise by proper pleas setting it up. What is the hindrance to pleading that matter in bar of an action at law? Will not a judgment based on a verdict conclude either party? If that verdict and judgment be for the defendants, would it not effectually bar that bond on the principle of *res judicata?* Could another action or suit be thereafter brought upon it? Surely not. Where then is the inadequacy of legal remedy? Mr. Hogg in Equity Principles, s. 45, says: "Equity will never cancel or

rescind a contract, agreement, or other written instrument, except upon some recognized principle of jurisdiction belonging to the court of chancery. It is generally accepted doctrine that equitable relief, for the purpose of cancelling a contract, will not be granted in a case where the injured or defrauded party has an adequate, certain and complete remedy at law. The usual instances wherein equity interposes here are to remove a cloud upon title to real estate; to cancel deeds or other contracts because of fraud, mistake, undue influence, fraudulent concealment, inadequacy of consideration, mental incapacity and infancy, and because of contracts obtained by persons in confidential relationship with others." In *Oelrich* v. *Spain,* 15 Wall. 211, 231, it is said: "Where there is a complete remedy at law, a bill in equity must be dismissed. This objection is regarded as jurisdictional, and may be enforced by the court, *sua sponte,* though not raised by the pleadings nor suggested by counsel." See note 9 Am. St. R. 859. Beach, Modern Eq. Juris., s. 551, says: "The cases in which a court of equitty exercises its jurisdiction to decree the surrender and cancellation of written instruments are, in general, where the instrument has been obtained by fraud; where a defense exists which would be cognizable only in a court of equity; where the instrument is negotiable, and by a transfer the transferee may acquire rights which the present holder does not possess; and where the instrument is a cloud upon the title of the plaintiff to real estate."

In section 553 Mr. Beach further says: "It is not material upon the question of jurisdiction that the party seeking the relief has a defense at law to the instrument of which he prays the surrender and cancellation. But, on the other hand, some circumstance in addition of the allegations of a defense must be shown. The instrument must have been created or obtained by fraud, or there must be some danger that by its transfer to a *bona fide* holder the party may lose the benefit of his defense, or some other substantial reason must be assigned showing that a defense at law is not a sufficient protection. 'If,' say the court of appeals of New York, 'the mere fact that a defense exists to a written instrument were sufficient to authorize an application to a court of equity to decree its surrender and cancellation, it is obvious, that every controversy in which the claim of either party was evidenced by a writing could be drawn to the equity side of the court and tried in the mode provided for the trial of equita-

ble actions, instead of being disposed of in the ordinary manner by a jury. And further, the mere ordinary danger of losing evidence, common to every case involving questions of fact, is not regarded as a sufficient ground for the exercise of the jurisdiction. If it were, every case where a defense must be made would be brought into equity." In s. 552 we find the language: "Some special ground for equitable relief must be shown, and the mere fact that an instrument ought not to be enforced is insufficient, standing alone, to justify a resort to a court of equity." Of course if the estate or interest is purely equitable, not legal, equity has exclusive jurisdiction; for otherwise the party would have no relief. Where the right is legal equity will not exercise jurisdiction, if the legal remedy is adequate. 1 Pom. Eq. Juris., ss. 1377, 911. These principles plainly require us to reverse the decree and dismiss the bill, because of want of jurisdiction in equity to entertain it, and of course without prejudice to the right of the plaintiffs to their defense at law. It is hardly necessary to say that this decision shall not prejudice in any way their right of defense at law.

*Reversed.*

DENT, JUDGE, *(dissenting):*

From the conclusion in this case I dissent.

The bill in effect alleges that the plaintiffs at the instance of the defendant bank entered into a contract to compromise an alleged defalcation on the part of the plaintiffs' principal to such bank, that the defendant agreed that if the plaintiffs would pay it six thousand dollars as a settlement, it would deliver up for cancellation the bond signed by the plaintiffs as sureties for the defaulting cashier and would not have any litigation over the matter, that plaintiffs strictly complied with their part of the agreement, but the defendants refused to carry it out, but in fraud thereof instituted proceedings at law against the plaintiffs, and they ask that their contract be specifically performed. In short, their allegation is that the proceedings at law are in furtherance of the fraud perpetrated on plaintiffs by withholding from plaintiffs the bond stipulated after plaintiffs had fully complied with their part of the compromise. This gives plaintiffs undoubted right to appeal to equity as the remedy at law is wholly inadequate. First, they bought their peace at law and

are entitled to it according to the pleadings and proofs. Second, they had the right to appeal to the consciences of the defendant's officers, as they are powerless to prove such officers' agency to make the compromise otherwise than through themselves which places plaintiffs at a great disadvantage on the trial in a court of law, even at the mercy of the defendants. Third, the possession of the bond at law is presumptive evidence of the right to it, which must be overcome by proof, while in equity no such presumption arises; on the contrary equity regards that done which should have been done, and decrees cancellation accordingly. Fraudulent retention is equivalent to fraudulent procuration. Fourth, plaintiffs are compelled to endure the harrassment, the prolongation and the uncertain vicissitudes of a law suit, while the defendants enjoy the full benefit of the fraud perpetrated by them in securing a compromise and breaking it, and have within their power the evidence on which plaintiffs' right of recovery depends. Fifth, it is neither equitable, just nor right to send plaintiffs to a court of law and thus aid the defendants in the perpetration of their fraud and throw on plaintiffs the great burden of proving the plea of covenants performed or accord and satisfaction, when the proof thereof is wholly in the breast of the defendants here, who are not parties to the law suit, and yet the real persons interested therein, and whom plaintiffs cannot make witnesses except by placing themselves at their mercy. In chancery the corporate name represents the consciences of the corporate officers while at law it is a legal entity without soul or conscience. In Story's Equity Jurisprudence, s. 728, it is said: "Courts of equity ought not to decline the jurisdiction for a specific performance of contracts whenever the remedy at law is doubtful in its nature, extent, operation or adequacy." "Equity will restrain the enforcement of a legal claim where promises have been made to the person legally liable not to enforce it on the faith of which obligations have been entered into." Hilliard on Inj., s. 59, 283. Compromises are favored and will be enforced in equity, also contracts for the delivery, execution, assignment or cancellation of promissory notes and for the transfer of debts and claims may be enforced specifically. 22 Am. & En. En. Law 995, 1000; *Phillips* v. *Berger,* 8 Barb. (N. Y.) 527; *Gottschalk* v. *Stein,* 69 Md. 51; *Shockly* v. *Davis,* 17 Ga. 177; *Tuttle* v. *Moore,* 16 Minn. 123; Story's Equity Jurisprudence, Vol. 2, ss. 694, 700. This is not

a case where there is a mere defense of a written instrument involved, but is a case where the defendants are engaged in doing the very thing expressly. stipulated for a valuable consideration that they would not do, and the suit brought by them in the name of the bank is in violation and fraud of their express agreement not to bring it after they have received valuable consideration for not doing so, and is therefore not subject to the doctrine of concurrent jurisdiction. The question is not as to which court has the prior jurisdiction, but whether equity has jurisdiction to prevent the defendants from doing what they bargained not to do to the harrassment and injury of the plaintiffs. The court should have either cancelled the contract or enforced it. By dismissing the suit the court cancels and annuls that portion of the contract wherein it was agreed that there should be no litigation between the parties, and throws it wide open for litigation, although it permits the defendants to retain the full price paid by the plaintiffs to secure their peace. Not only so, but it deprives plaintiffs of the right to appeal to the consciences of the defendants interested in but not parties to the law suit and places plaintiffs at their mercy in so far as their evidence may be needful to establish the compromise or the terms thereof and power to make it. Under this holding in all cases of concurrent jurisdiction fraud by increasing fraud may select its own tribunal and thereby oust the jurisdiction of equity.

Such determination may be the law of this case, but it is contrary to equity and good conscience.

The jury trial argument should receive but little weight as an issue out of chancery may be easily had in all proper cases, and the rules of equity as a court of conscience should be made correspondingly plastic, that justice may prevail over the technical formalities of judicial procedure. Section 4, chapter 131, Code; *McGregor* v. *Camden*, 47 W. Va. 200; *Davis* v. *Alexander*, 42 W. Va. 465. The whole frame and contents of the bill verified by affidavit show that it is an appeal to the consciences of the defendants as to facts peculiarly within their knowledge and without which plaintiffs are powerless to sustain their defense in a court of law and which are necessary to substantiate the fraud practiced upon them in securing their money, withholding the bond and bringing suit thereon in violation of express representations and stipulations to the contrary. When the defense is

materially dependent on the evidence of the real plaintiffs, because the unbending rules of law can afford no relief, equity steps in.   Discovery, disadvantage at law, deprivation of evidence, deceit practiced, and default of legal remedy, all call for equitable interference.  2 Story's Equity Jur., ss. 690, 695, 699, 700, 705, 716, 877, 882.  The equity of this case is too plain for further comment.  It is not though an infringement of the ordinary policy of the times to surrender the uneducated farmer to the protecting care of the educated banker.  The Law demands it, Equity sanctions it, and blind justice weeps and pleads in vain.   For

> "There is no power in Venice,"
> "Can alter a decree established."
> "'Twill be recorded for a precedent."
> "And many an error, by the same example,"
> "Will rush into the state."