CHARLESTON APARTMENTS CORPORATION *v.* APPALACHIAN ELECTRIC POWER COMPANY

(No. 8472)

Submitted February 23, 1937. Decided May 25, 1937.

Fox, JUDGE, absent.

*Hyman C. Cohen* and *Owen, Silverstein & Davis*, for appellant.

*Campbell, McClintic & James* and *Charles C. Wise*, for appellee.

RILEY, JUDGE:

This is a suit in equity brought by Charleston Apartments Corporation, a corporation, against the Appalachian Electric Power Company, a corporation, the primary purpose of which is to obtain a decretal judgment for the excess over an alleged lawful rate paid over protest for electric energy. The plaintiff complains of the action of the chancellor in overruling its demurrer to the defendant's plea in abatement, challenging jurisdiction, and dismissing the cause.

The plaintiff is a corporation, having its principal office in the City of Charleston, and engaged in the construction and operation of residential apartment buildings in said city. The defendant, Appalachian Electric Power Company, is a public utility company, furnishing electric service to the public pursuant to tariffs, rules, regulations, terms and conditions promulgated and approved by the Public Service Commission of West Virginia.

The pertinent allegations of plaintiff's bill of complaint are as follows: During the years 1930 and 1931, the plaintiff constructed three apartment houses in the City of Charleston, to-wit, the La Salle (March, 1930), the Argonne (October, 1930), and Aracoma ( Septem-

ber, 1931), and wired the several buildings as to require the use of but one electric meter in each building, and charged to the tenant a definite rental for each of the apartments housed in said buildings, such charge including the unrestricted and unlimited use of electric energy; after the completion of the La Salle, a representative of the plaintiff company called at the office of the defendant company and made known plaintiff's desire to purchase electric energy at the cheapest possible available rate, and thereupon was handed a printed form upon which said representative inserted BR6B (Full Residential Electric Service), and signed the same and left; the charge of the first month being greater than said representative had anticipated, he again visited defendant's office, and found that a line had been drawn through BR6B and "CL6B" (Commercial Lighting) inserted in its stead; that although plaintiff protested service under "CL6B", it had to pay thereunder in order to serve the patrons of its apartment building; that the plaintiff has been obliged to pay to the defendant a sum of money estimated at somewhat in excess of $6,000.00 over and above the amount defendant was rightfully entitled to collect, and that the plaintiff is unable to compute the exact amount it is entitled to recover back. The bill of complaint, in addition to the relief prayed for, seeks a discovery as to the sums of money the defendant has illegally collected by requiring the plaintiff to accept service under the tariff CL6B.

To the original bill of complaint, the defendant filed two pleas: one in bar and the other a plea in abatement to the effect that the Public Service Commission and not the circuit court had jurisdiction of the matters in controversy. The plea in bar was withdrawn. Thereafter, the bill of complaint was amended by including therein a new tariff of March 1, 1935, which provided:

> "Available for full domestic electric service through one meter to individual residential customers, including rural domestic customers engaged principally in agricultural pursuits."

To the bill of complaint, as amended, the defendant re-

newed its plea in abatement, and the plaintiff renewed its demurrer to said plea in abatement. The trial court then overruled plaintiff's demurrer to the defendant's plea in abatement and dismissed the bill of complaint. This action of the trial court, as shown from its opinion, was based on the ground that the matters in controversy were administrative, and not judicial, and resort should have been had to the Public Service Commission of West Virginia.

Besides the prayer for discovery, the bill of complaint, as amended, has a two-fold purpose: the matter of plaintiff's proper classification after March 1, 1935 under the tariff known as BR6B; and a decretal judgment for the amount charged in excess of the rate prescribed in said tariff. The first branch of this prayer as to the future furnishing of electric energy clearly goes to the reasonableness of the rate and would present an administrative question which should be solved by the Public Service Commission. *Robinson* v. *Baltimore and Ohio Railroad Company*, 64 W. Va. 406, 63 S. E. 323. However, the amendment by the inclusion of the tariff of March 1, 1935, made the prayer for relief as to future service a moot question.

The question remaining, besides involving the right to discovery, is concerned with the right of the plaintiff to recover in circuit court the amount paid over the tariff prior to March 1, 1935. This excess is about $6,000.00. The defendant contends that the question is administrative, and therefore the Circuit Court of Kanawha County was without jurisdiction. Upon this contention, the plea in abatement in question was based. At this late date, it is entirely unnecessary for us to go beyond the decisions and statute of our own state for a solution of this question. Code 1931, 24-4-7, reads in part:

"Any person, firm or corporation claiming to be damaged by any violation of this chapter by any public utility subject to the provisions of this chapter, may make complaint to the Commission, as provided herein, and bring suit in his own behalf for the recovery of the damages

for which such public utility may be liable under this chapter in any circuit court having jurisdiction."

The legal rate prior to March 1, 1935, is unquestioned. Whether the amount paid by the plaintiff exceeds the legal rate is purely a judicial question of which the Circuit Court of Kanawha County has jurisdiction. The question is concerned with the construction and applicability of the prevailing tariff, and not the reasonableness of said tariff. Clearly, the question is one of law which should be adjudicated by the circuit court. The Supreme Court of the United States in *Great Northern Railway Company* v. *Merchants' Elevator Co.,* 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943, said: "But what construction should be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute." In several decisions this question has been considered by this court. *Natural Gas Company of West Virginia* v. *Sommerville, Judge, et al.,* 113 W. Va. 100, 166 S. E. 852; *Wheeling Steel Corporation* v. *Public Service Commission,* 90 W. Va. 74, 110 S. E. 489, 491; *C. & O. Railway Company* v. *Rogers,* 75 W. Va. 556, 84 S. E. 248. *Natural Gas Company* v. *Sommerville, Judge, et al., supra,* involved the right of the Circuit Court of Ohio County to entertain a suit in equity brought by consumers of a gas company for the purpose of requiring the company to account for the amount paid it by its customers under an alleged illegal rate in excess of an alleged legal rate. In an able opinion written by Judge Maxwell, in which this court refused a writ of prohibition to prevent the prosecution of the suit in chancery, it was said: "The question whether the charges made by the gas company were in excess of the legally prescribed rate in effect at the time the charges were made, presents a judicial question of which the Circuit Court of Ohio County has jurisdiction." We think the solution of the question whether the plaintiff is entitled to any excess over the domestic rate prior to March 1, 1935, lies with the Circuit Court.

On this appeal, another question of jurisdiction arises. The demand for relief as set forth in the bill of complaint is purely legal. It then becomes necessary to decide whether the allegations as to discovery are sufficient to sustain equity jurisdiction. This allegation reads: "And that it does not now have in its possession the information that will reveal in dollars and cents the actual amount of the money your complainant has been overcharged by reason of said rates." Because the demand for relief is legal, the allegations for discovery must show that the discovery prayed for is indispensable for a lack of other proof. The converse would be true had the bill alleged a cause of action cognizable in equity. *Warren* v. *Boggs et al.*, 83 W. Va. 89, 97 S. E. 589; *Thompson* v. *Whitaker Iron Co.*, 41 W. Va. 574, 23 S. E. 795; *Prewett* v. *Bank*, 66 W. Va. 184, 66 S. E. 231, 135 Am. St. Rep. 1019; Hogg's Equity Procedure (Carlin Edition), section 182.

This question was not raised by demurrer. However, lack of equity jurisdiction may be taken notice of by this court on its own motion. *Arnold* v. *Mylius*, 87 W. Va. 727, 105 S. E. 920; *Buskirk* v. *Ragland*, 65 W. Va. 749, 65 S. E. 101; *Thompson* v. *Adams*, 60 W. Va. 463, 55 S. E. 668. Clearly, we think, the allegation as to discovery in the instant case is insufficient to sustain equitable jurisdiction.

For the foregoing reasons, we reverse the decree of the trial chancellor and remand this cause, without prejudice to the plaintiff, to make such amendments to its pleadings as may be advisable, not inconsistent with this opinion.

*Reversed and remanded.*